2022 IL App (2d) 200227-U
No. 2-20-0227
Order filed May 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1974 |
| ERIC SCOTT BRAMWELL, | ) ) ) | Honorable Alexander F. McGimpsey III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in dismissing defendant's first stage postconviction petition as his claims were patently without merit. We also modify defendant's sentencing order to reflect the correct statutory citation. Therefore, we affirm as modified.

¶ 2    Defendant appeals *pro se* the dismissal of his first stage postconviction petition. Defendant was found guilty of one count of burglary. Because of defendant's prior felony convictions, he was eligible for Class X sentencing under the General Recidivism Provisions of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2016)) and sentenced to 22 years' imprisonment. Defendant's voluminous postconviction petition sought review of, *inter alia*, defendant's

enhanced Class X sentencing; the trial court's determination that defendant was ineligible to elect probation and treatment under section 40-5 of the Alcoholism and Other Drug Abuse and Dependency Act (now the Substance Use Disorder Act) (20 ILCS 301/40-5 (West 2016)) (commonly referred to as Treatment Alternative to Street Crime or TASC probation), the Department of correction's interference with defendant's ability to file his direct appeal, and the fact that he was erroneously sentenced under repealed section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West Supp. 2009) (recodified by Pub. Act 95-1052 (eff. July 1, 2009) as 730 ILCS 5/5-4.5-95 (West 2010))). The trial court dismissed the petition as unintelligible and devoid of rational legal principles. For the following reasons we affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4      On August 1, 2015, defendant and another man entered the common area of an apartment complex located at 121 North Cross Drive, Wheaton, Illinois, with the intention of stealing media equipment from the complex's media room and rent monies from a drop box. The pair were interrupted by the building's maintenance technician and fled the scene, making off with a universal remote from the media room. On October 22, 2015, defendant was charged by indictment with one count of burglary (720 ILCS 5/19-1 (West 2014)) related to the August 1, 2015, incident.

¶ 5      Because defendant had prior felony convictions, the State sought Class X sentencing under the General Recidivism Provisions of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2014)). Defendant was notified on numerous occasions that the State was seeking Class X sentencing. At the October 19, 2015, bond review hearing, the State indicated that defendant was eligible for Class X sentencing stating, "But being that that's going to be a Class 2 felony, based on his history, he's Class X sentencing eligible, so he's going to be non-probationable on this

offense." At the October 23, 2015, arraignment hearing, the State again indicated defendant was Class X eligible stating, "The Grand Jury did return a true bill on one count of burglary, a Class 2 felony, for which the defendant is extended term eligible. It's non-probationable, Class X sentencing."

¶ 6     On November 16, 2015, defendant filed a petition for TASC probation. Defendant's petition was heard on December 21, 2015. Although defendant had been accepted by a TASC program, the trial court determined that because the State was seeking Class X sentencing, defendant was ineligible for TASC probation.

¶ 7     Defendant was again advised by the court that he was eligible for Class X sentencing at a January 17, 2016, discovery review. Up to this point defendant had been represented by counsel, but he thereafter elected to proceed *pro se*. While *pro se,* defendant was advised several more times he was eligible for Class X sentencing: the trial court advised defendant that he was Class X eligible on May 31, July 6, and 27, 2016; and on September 16, 2016, the State advised defendant and the court that it believed that defendant was Class X eligible based on his prior convictions.

¶ 8     A two-day jury trial was held on November 8 and 9, 2016, and defendant was found guilty of one count of burglary. On January 4, 2017, defendant was sentenced to 22 years' imprisonment. At the sentencing hearing, evidence was presented that defendant had been found guilty of eight counts of burglary and one count of attempted armed robbery with use of force in Wisconsin. Further evidence was presented regarding nine other pending burglary charges in Illinois.

¶ 9     Defendant failed to timely file a direct appeal. Defendant subsequently filed a first stage postconviction petition, which is file stamped January 22, 2020.[1] The trial court dismissed the

---

[1] Because no timely direct appeal was filed in this matter, defendant would have

petition finding that the petition was "essentially unintelligible" and that "no legal meaning or legal principles [were] intelligently put forth[.]" Defendant timely appealed the dismissal.

¶ 10                                        II. ANALYSIS

¶ 11     At issue in this appeal is whether the summary dismissal of defendant's petition was proper. "The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously upon direct appeal." *People v. Morgan*, 187 Ill. 2d 500, 528 (1999). "The Act is not a substitute for an appeal, but rather, is a collateral attack on a final judgment." *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding has three stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the trial court must determine whether "the petition is frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). "A postconviction petition is considered frivolous or patently without merit only if the allegations in

---

had three years from his January 4, 2017, to file his postconviction petition. 725 ILCS 5/122-1(c) (West 2020). However, defendant's petition and affidavit weren't received in the circuit clerk's office until January 22, 2020. While January 22, 2020, was beyond the deadline for filing defendant's postconviction petition, defendant had also mailed a letter to the circuit clerk, that was filed stamped January 14, 2020, wherein he stated he had mailed his postconviction petition on January 2, 2020, and the postconviction documents included an affidavit stating he had placed them in the prison mailbox on January 2, 2020. Under the mailbox rule, a filing is considered timely when the filing is placed in the prison mail system by an incarcerated defendant. *People v. Scott,* 2019 IL App (2d) 160439, ¶ 16. Therefore, defendant's postconviction petition was timely filed.

the petition, taken as true and liberally construed, fail to present the gist of a constitutional claim." *Edwards*, 197 Ill. 2d at 244 (internal quotation marks omitted). The gist standard is a low threshold, and a defendant need only present a limited amount of detail and need not include legal arguments or legal authority. *Id.* While postconviction petitions should be construed liberally, the court is not required to distort reality and petitions which rely on indisputably meritless legal theories or fanciful factual allegations may be dismissed. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009); *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48.

¶ 12    Defendant's petition was 182 single-spaced pages and consisted primarily of pseudo-legal theories arising from the Sovereign Citizens Movement. Approximately 300 pages of exhibits and other materials were likewise filed, consisting of legislative materials and various spurious declarations.

¶ 13    Regarding defendant's Sovereign Citizen claims, such arguments have "no conceivable validity in American law." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). These arguments are often frivolous and non-constitutional and have also been deemed sanctionable in a civil context as they waste the time and resources of the litigants, judges, law clerks, librarians, and court clerk's office. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶¶ 1, 80-94.

¶ 14    However, several of defendant's arguments were based in Illinois law, and while his petition was voluminous these arguments were not isolated nuggets hidden within otherwise patently meritless materials but were clearly labeled and self-contained under their own headers.

¶ 15    On appeal, defendant does not address every argument he made in his postconviction petition but limits his arguments to the following areas. Defendant challenges several aspects of his Class X sentencing. He maintains that the State's intention to seek Class X sentencing should

have been included in the indictment, and that his prior convictions needed to be proved to the jury. He argues that the trial court erred in denying defendant TASC probation. He also argues that his sentence is void because he was sentenced under a repealed statute. He likewise argues that he was improperly prevented from filing his direct appeal.

¶ 16    As an initial matter, we note that the doctrines of forfeiture and *res judicata* typically bar arguments which were raised or could have been raised on direct appeal from being raised in a postconviction petition. *People v. Blair*, 215 Ill. 2d 427, 442-45 (2005). However, the failure to file a direct appeal does not forfeit constitutional claims on a postconviction hearing. *People v. Rose*, 43 Ill. 2d 273, 279 (1969) ("Thus, a party who fails to take an appeal, whether by careful choice, inadvertence, indigence, or as a result of fleeing the jurisdiction as here, may waive claims of error, but any right which may have existed to a post-conviction hearing on the constitutionality of imprisonment will remain undiminished."). Because no direct appeal was taken in this case, we may consider defendant's constitutional claims.

¶ 17                    A. Class X Sentencing

¶ 18    Defendant maintains that the State failed to include in the charging instrument that it intended to seek Class X sentencing as required by section 5/111-3(c) of the Code of Criminal Procedure. 725 ILCS 5/111-3(c) (West 2016). In response the State argues that the Class X sentencing enhancements of the General Recidivism Provisions are an exception to the requirements of section 111-3(c). In support the State cites *People v. Jameson*, 162 Ill. 2d 282 (1994). The *Jameson* court held that the State was not required under section 111-3(c) to provide pretrial notice to the defendant that it would be seeking Class X sentencing under section 1005-5-3(c)(8) of the Unified Code of Corrections (Ill.Rev.Stat.1989, ch. 38, ¶ 1005-5-3(c)(8) (recodified by Pub. Act 95-1052 (eff. July 1, 2009) as 730 ILCS 5/5-4.5-95 (West 2010))). The court held that

the recidivism provisions did not constitute an enhanced sentence under the act because while it increased the sentence, it did not alter the classification of the underlying offense. *Jameson*, 162 Ill. 2d at 290-91. As the case law is clear that the State did not need to include its intent to seek Class X sentencing in the charging instrument, defendant's claim is patently without merit.

¶ 19    Defendant further argues that the State failed to prove his prior convictions beyond a reasonable doubt. He argues that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required the State to present evidence of defendant's prior convictions to the jury at trial. However, *Apprendi* clearly states that, "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." (Emphasis added.) *Id.* at 490; see also *People v. Lathon*, 317 Ill. App. 3d 573, 587 (2000) ("Under this mandatory Class X sentencing provision, a defendant's sentence is properly increased when the trial judge concludes at the sentencing hearing that evidence of the prior two convictions is accurate, reliable and satisfies the section 5-5-3(c)(8) statutory factors.")

¶ 20    The General Recidivism Provisions require that:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

(1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);

(2) the second felony was committed after conviction on the first; and

(3) the third felony was committed after conviction on the second."

730 ILCS 5/5-4.5-95(b) (West 2016).

In the instant case defendant committed burglary, a Class 2 felony, on August 1, 2015. See 720 ILCS 5/19-1 (West 2016). Evidence was produced at sentencing showing that defendant committed attempted armed robbery with use of force (Wis. Stat. § 939.32(1), 943.32(2) (2005-06)) on March 24, 2006, in Dane County, Wisconsin, and was convicted on September 6, 2006. The elements of attempted armed robbery with use of force under Wisconsin law are the same as attempted armed robbery under Illinois law, which is a Class 1 felony. See *id.*; 720 ILCS 5/8-4, 18-2 (West 2016). Defendant was later convicted of eight counts of burglary of a building or dwelling (Wis. Stat. § 943.10 (2009-10)) in Dane County, Wisconsin, on September 7, 2011. The burglaries were committed over the course of January 9 through 14, 2010. Further, burglary of a building or dwelling under Wisconsin law has the same elements as burglary of a building under Illinois law, which is a Class 2 felony. See *id.*; 720 ILCS 5/19-1 (West 2016). Defendant was over the age of 21 when all of these offenses were committed. Accordingly, defendant's claim is patently without merit.

¶ 21                              B. TASC Probation

¶ 22    Defendant argues that the trial court arbitrarily denied him TASC probation. Under the Alcoholism and Other Drug Abuse and Dependency Act (now the Substance Use Disorder Act),

"If a court has reason to believe that an individual who is charged with or convicted of a crime suffers from alcoholism or other drug addiction and the court finds that he is eligible to make the election provided for under section 40-5, the court shall advise the individual that he or she may be sentenced to probation and shall be subject to terms and

conditions of probation under Section 5-6-3 of the Unified Code of Corrections if he or she elects to submit to treatment and is accepted for treatment by a designated program." 20 ILCS 301/40-10 (West 2016).

However, section 40-5 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40-5 (West 2016)) lists several factors which can make a defendant ineligible to elect TASC probation. In addition to those limitations, "[a] person sentenced as a Class X offender under this subsection (b) [of the General Recidivism Provisions] is not eligible to apply for treatment as a condition of probation as provided by Section 40-10 of the Substance Use Disorder Act (20 ILCS 301/40-10)." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 23    In the instant case defendant petitioned the trial court for TASC probation and was likewise accepted by the TASC program. However, the trial court determined that defendant was ineligible for TASC probation as the State was seeking Class X sentencing. Further, while the court did not reach this point, defendant had several other pending felony burglary charges which would have likewise rendered him ineligible to elect TASC probation. 20 ILCS 301/40-5(4) (West 2020). Accordingly, defendant's claim is patently without merit.

¶ 24                        C. Denial of Direct Appeal

¶ 25    We turn to defendant's claim that he was denied the opportunity to file a direct appeal. Defendant maintains that he prepared his notice of appeal in a timely manner. Defendant was sentenced on January 4, 2017. Defendant maintains that on January 11, 2017, he placed his notice in a 9 by 12 inch envelope that was too large to fit into the jail's mail slot. He placed the envelope on top of the mail slot, which was the accepted process for sending mail which was too large to fit in the slot. Later in the early morning of January 12, 2017, defendant was awoken and told he was being transferred to a different facility. The envelope containing his notice of appeal was returned

to him unmailed. Over the course of several days, he was transferred between facilities three times. During this time, he attempted to have his envelope mailed, but either did not have access to his property or the prison's mail/library facilities. Defendant was eventually given access to the law library on February 18, 2017. He prepared a request for an extension of time to file his notice of appeal and mailed his documents to the circuit court on February 21, 2017, as the deadline for filing his notice of appeal had passed. The record reflects that on March 3, 2017, the trial court entered an order indicating it had received defendant's notice of appeal and instructed the circuit clerk to forward these materials to the Second District Appellate Court. On March 9, 2017, appellant received his envelope back from the Second District Appellate Court with a note indicating that defendant needed to file a late notice of appeal in the appellate court. March 9, 2017, was the last day of the 30-day period for filing a late notice of appeal under Illinois Supreme Court Rule 606 (eff. Dec. 11, 2014). Defendant maintains that he re-sent his notice of appeal to the Second District Appellate Court but received no reply. He does not indicate when he resent his documents, nor why he waited three years to seek an appeal through his postconviction petition. The Second District Appellate Court has no record of defendant's late notice of appeal or proof of service under Supreme Court Rule 12(b)(6) (eff. Nov. 1, 2016) which renders his appeal untimely.

¶ 26    "A criminal defendant has no federal constitutional right to a direct appeal, but under the Illinois Constitution the right to appeal a criminal conviction is fundamental." *People v. Ross*, 229 Ill. 2d 255, 268 (2008). In the case at bar, defendant alleged that circumstances beyond his control (i.e., his multiple transfers between holding facilities) interfered with his ability to timely file his direct appeal. Our supreme court has recognized "a very limited exception to Rule 606", by means of section 122-6 of the Post-Conviction Hearing Act (725 ILCS 5/122-6 (West 2020)), that permits a trial court to allow a defendant leave to file a late notice appeal beyond the normal timeframe in

instances where there has been a deprivation of his constitutional rights. *Ross,* 229 Ill.2d at 271. In *Ross* the defendant filed a postconviction provision well after the six-month deadline for filing a late notice of appeal under Rule 606 alleging that his counsel was ineffective for failure to file a notice of appeal. Our supreme court held that when a postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal. *Id.* at 271.

¶ 27    Even with these limited exceptions under *Ross* and its progeny, Supreme Court Rule 606 does not permit a postconviction trial court to simply disregard the time limits for filing notices of appeal and late notices of appeal. A notice of appeal confers jurisdiction on the court (Ill. S. Ct. R. 606(a) (eff. Dec. 11, 2014)), and it must be filed within 30 days after the entry of the final judgment or a timely motion to reconsider that judgment (Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014)). Supreme Court Rule 606(c) (eff. Dec. 11, 2014) does however sets forth certain circumstances where an appellant may obtain an extension of time to file a notice of appeal. Rule 606(c) provides, in pertinent part, as follows:

> "On motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or on motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing." Ill. S. Ct. R. 606(c) (eff. Dec. 11, 2014).

¶ 28    As a result, Rule 606(c) thus sets forth two-time frames from which a petitioner may request to file a late appeal: (1) within 30 days from the expiration of the time for filing the notice of appeal and (2) within six months of the expiration of the time for filing the notice of appeal.

¶ 29    Therefore, the appellate court can allow a defendant to file a late notice of appeal within 30 days of the expiration of the appeal period, if the defendant shows a reasonable excuse, or within six months of the expiration of the appeal period if the defendant shows a meritorious issue and a lack of culpable negligence. Here, defendant has failed to establish a claim of a deprivation of his constitutional rights or an erroneous deprivation of his liberty.

¶ 30    While the defendant did attempt to file what could be characterized as a motion to file a late notice of appeal when he mailed his documents to the circuit court on February 21, 2017, the circuit court is not the proper place to file such a request. Rule 606(c) specifies that such a motion must be made to the reviewing court. This is why the materials were returned to defendant by this court with instructions to file his motion in the appellate court. As discussed, no such motion was ever received, nor was proof of service under Supreme Court Rule 12(b)(6) (eff. Nov. 1, 2016) ever provided. Even assuming *arguendo* that defendant's right to a direct appeal was disrupted, defendant had sufficient opportunity to file a motion for a late notice of appeal and failed to do so. See *People v. Vilces*, 321 Ill. App. 3d 937, 940 (2001) (A defendant who elects to proceed *pro se* must comply with the rules of procedure in the same way as attorneys, and courts will not apply a more lenient standard.).

¶ 31    Defendant cites no supreme court rule or caselaw which would empower the trial court to grant him a late notice of appeal under these circumstances. Further the appellate court is not a depository into which a party may dump the burden of research. *People v. O'Malley*, 356 Ill. App. 3d 1038, 1046 (2005). Moreover, section 122–6 does not specifically mention leave to file a late

notice of appeal among the remedies available to a trial court in a postconviction proceeding. Under these circumstances, if a defendant still wants a direct appeal, his recourse lies in the supervisory authority of the supreme court. *People v. Lyles*, 217 Ill. 2d 210, 216 (2005)

¶ 32    Importantly, the trial court had no discretion to forgive petitioner's failure to comply with our supreme court rules. *People v. Salem*, 2016 IL 118693, ¶ 19. As instructed by our supreme court, "[T]he circuit courts of this state must enforce and abide by the rules of this court." (*Emphasis in original.*) *People v. Lyles*, 217 Ill. 2d at 217, (quoting *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). The law is clear because neither the trial court nor the appellate court can excuse compliance with this court's rules governing appeals; its power to reinstate an appeal ends when its jurisdiction does, and it does not possess the supervisory authority of the supreme court. *Lyles*, 217 Ill.2d at 216.

¶ 33    It should be pointed out this is not an instance where petitioner's appeal involves claims against counsel for the failure to file a timely notice of appeal (*Ross*, 229 Ill. 2d 255, 271 (2008)) or for the circuit court's failure to timely provide him with notice of the summary dismissal of his postconviction petition (see *People v. Fikara*, 345 Ill. App. 3d 144, 158 (2003)). Petitioner also fails to claim that he was not advised of the time to file a notice of appeal. See *People v. Brown*, 54 Ill. 2d 25, 26 (1973); *People v. Williams*, 59 Ill. 2d 243, 246 (1974). Indeed, the record demonstrates that petitioner was provided with notice of his right to appeal. Here the trial court would have had no authority to allow the petitioner to file a late notice of appeal. For these reasons, we conclude the trial court acted correctly in dismissing petitioner's late notice of appeal filed more than three years after he was sentenced, well beyond the time limits of Rule 606(c), as frivolous and patently without merit.

¶ 34                            D. Sentencing Statute

¶ 35    Finally, we address defendant's argument that he was sentenced under the now repealed section 5-5-3(c)(8) of the Unified Code of Corrections. The January 4, 2017, sentencing order indicates that defendant was "Convicted of a class 2 offense but sentenced as a Class X offender pursuant to 730 ILCS 5/5-5-3(c)(8)." Section 5-5-3(c)(8) of the Unified Code of Corrections was recodified by Public Act 95-1052 as section 5-4.5-95(b). Therefore, defendant is correct that his sentencing order reflects that he was sentenced under a repealed statute. However, defendant is incorrect that this citation to an incorrect statute voided the judgment. A judgment is void if the trial court that entered it lacked either subject matter jurisdiction or personal jurisdiction. *People v. Castleberry*, 2015 IL 116916, ¶¶ 11-12. "Subject matter jurisdiction refers to a court's power 'to hear and determine cases of the general class to which the proceeding in question belongs.' " *Castleberry*, 2015 IL 116916, ¶ 12 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009)). "Personal jurisdiction refers to the court's power 'to bring a person into its adjudicative process.' " *Castleberry*, 2015 IL 116916, ¶ 12 (quoting *M.W.*, 232 Ill. 2d at 415). "[I]t is well-settled that 'jurisdiction is not affected by an incorrect judgment: jurisdiction or power to render a particular judgment does not mean that the judgment rendered must be the one that should have been rendered, for the power to decide carries with it the power to decide wrong as well as to decide right.' " *People v. Williams*, 2017 IL App (1st) 123357-B, ¶ 21 (quoting *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 532 (2001)). Here, the trial court had subject matter jurisdiction and personal jurisdiction, so the judgment was not void. Although the court cited a repealed statute, the sentence was authorized by a recodified statute. Accordingly, defendant's January 4, 2017, sentencing order shall be modified to reflect that defendant was sentenced as a Class X offender pursuant to 730 ILCS 5/5-4.5-95(b). See Ill. S. Ct. R. 366(a) (eff. Feb. 1, 1994) (granting reviewing courts the same powers of amendment as trial courts).

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed, and defendant's sentencing order is modified to reflect that he was sentenced under section 5-4.5-95(b) rather than section 5-5-3(c)(8) of the Unified Code of Corrections.

¶ 38    Affirmed as modified.