2019 IL App (2d) 160439
No. 2-16-0439
Opinion filed May 21, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02-CF-3615 |
| LUSTER T. SCOTT, | ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Luster T. Scott, appeals the second-stage dismissal of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The trial court found that the petition was untimely. We agree with defendant that his petition was timely. However, we affirm on the merits.

¶ 2                                    I. BACKGROUND

¶ 3    Following a jury trial, defendant was found guilty of two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2002)) and one count each of attempted vehicular hijacking (*id.* §§ 8-4(a), 18-4(a)(4)), attempted armed robbery

(*id.* §§ 8-4(a), 18-2(a)(2)), aggravated battery with a firearm (*id.* § 12-4.2(a)), and aggravated battery (*id.* § 12-4(b)(8)) related to a December 11, 2002, shooting in a bank parking lot.

¶ 4 Evidence at trial indicated that defendant, who was wearing baggy pants, a dark coat, a hooded sweatshirt, and a scarf covering the lower half of his face, pulled open the driver's door of the vehicle of a delivery courier, Richard Anderson, punched Anderson multiple times, and tried to pull a courier bag from the backseat. During the struggle, the scarf slipped from defendant's face, allowing Anderson to see him. Defendant forcibly took Anderson's keys, injuring Anderson in the process. An off-duty police officer, Rodney Hampton, arrived, and defendant shot him in the leg and fled the scene. Witnesses told the police the direction that he went, assisting them in locating him hiding near a shed. The police brought defendant back in handcuffs, and Anderson immediately identified him as the perpetrator. Hampton was unable to identify defendant but accurately described the clothing that he had been wearing. Two other witnesses also accurately described defendant's clothing. Near the shed, the police recovered clothing that matched the descriptions of defendant's clothing. A gun was also found that matched shell casings found at the crime scene and bullet fragments taken from Hampton. A scarf found near the gun had burrs on it similar to burrs found on defendant's clothing.

¶ 5 Before trial, defendant moved to suppress statements that he purportedly made to the police, arguing that he had not been given *Miranda* warnings and that the statements were the product of threats or promises. Defendant did not allege any physical coercion. At a hearing on the matter, one of the investigating detectives, Terrence Evoy, testified that, when defendant was interviewed at the police station, defendant had an abrasion on his face from when he was taken into custody. Evoy testified that he read the *Miranda* warnings to defendant and that defendant did not indicate that he wished to exercise his rights. Defendant then made incriminating

statements. Evoy's testimony was corroborated by Detective Scott Klecka, who was also present. Both detectives testified that they did not physically strike defendant or threaten him.

¶ 6    Defendant, who testified after Evoy and Klecka, contended that he was not given *Miranda* warnings, he consistently asked for his lawyer, and he never made any incriminating statements. Defendant said that, when he was arrested, he was thrown to the ground. He was later placed in a holding cell, and another man was there with him. He was then taken to an interrogation room. During his testimony, defendant was not specifically asked about physical coercion. However, defendant was asked on cross-examination if "[a]nything else happened" during the interrogation other than that he asked to go to the bathroom. Defendant said "[n]o." The court suppressed statements made during defendant's arrest, when he had asked for an attorney, but allowed statements made to Evoy.

¶ 7    Defendant was found guilty, and the trial court sentenced him to 22 years' incarceration. Defendant appealed, arguing in part that the court erred in failing to suppress his statements. We affirmed. *People v. Scott*, 366 Ill. App. 3d 1231 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). On April 30, 2007, the United States Supreme Court denied *certiorari*. *Scott v. Illinois*, 550 U.S. 923 (2007).

¶ 8    In November 2007, defendant, *pro se*, filed a postconviction petition. The first page following his petition was a proof of service in which defendant stated that, on October 28, 2007, he placed the petition in the prison mail system to be mailed to the clerk of the circuit court of Du Page County. Defendant listed the address for the clerk as "Box 707" in Wheaton and listed the zip code as "60189-0707,"[1] but listed the zip code at the same box number for the state's

---

[1] At the bottom of the preprinted form on which defendant wrote his proof of service, the clerk's zip code is stated precisely this way.

attorney as "60187." The clerk's correct zip code is 60187-0707. *Du Page County IL−Clerk of the Circuit Court*, The County of Du Page, https://www.dupageco.org/CourtClerk (last visited May 20, 2019) [https://perma.cc/9Z79-JJ8M]. Following the proof of service was a motion to proceed *in forma pauperis* and an "affidavit." The affidavit, dated October 28, 2007, but not notarized, stated that, pursuant to "735 ILCS 5/109 [*sic*]" and under penalty of perjury, "everything contained herein" was true and accurate to the best of defendant's knowledge and belief. The record contains an envelope for the mailing postmarked October 31, 2007, and it was filed with the trial court on November 6, 2007.

¶ 9     The trial court summarily dismissed the petition, finding that it was untimely and did not state the gist of a constitutional claim. Defendant appealed, contending that his trial counsel was ineffective for failing to investigate and call a witness at trial who he contended was a witness to violations of his *Miranda* rights and to physical abuse by the police. We noted that the trial court could not dismiss the petition on the basis of untimeliness at the first stage, but we affirmed because defendant failed to provide an affidavit from the witness. However, when defendant petitioned for rehearing and presented an affidavit from the witness, Jon McClain, we granted the petition and reversed and remanded for further postconviction proceedings. *People v. Scott*, 403 Ill. App. 3d 1202 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23). We noted that, if defendant's counsel had presented the witness and the trial court had found him credible, the result of the motion to suppress might have been different. Thus, in light of the affidavit, it was at least arguable that counsel was ineffective. *Scott*, slip order at 7.

¶ 10     In October 2015, after an unexplained lengthy delay, defendant's postconviction counsel filed an amended petition raising multiple issues. In particular, the petition alleged that trial

counsel was ineffective for failing to investigate and call McClain and to investigate defendant's allegations that the police abused him.

¶ 11    Defendant attached an affidavit in which he averred that he had been placed in a holding cell with a man he did not know. He averred that he never asked to speak to police officers and repeatedly asked to speak to his attorney. He was removed to an interrogation room, where Evoy and Klecka punched him in the face multiple times. Defendant averred that he told his attorney that he had been abused and that a witness could corroborate his claims, but his attorney told him that these facts were irrelevant because there was not enough evidence to convict him. He also averred that he asked his appellate attorneys to raise the issue but that they told him that it should be saved for a postconviction petition. After defendant was transferred to a different correctional center, he learned that McClain was the person who had been in the holding cell with him.

¶ 12    Defendant also attached an affidavit from McClain, who averred that he shared the holding cell with defendant and heard defendant ask for an attorney. He averred that, when defendant refused to answer questions, an officer said " 'You will talk to our detectives.' " Later, two officers came and defendant told them that he wanted to talk to his attorney. The officers took defendant from the cell. McClain averred that, when defendant returned, he had a cut over his eye and some swelling, which were not present before he was taken away. According to McClain, the officers returned, defendant again said that he wanted his attorney and had nothing to say to them, and they took defendant away again. McClain then did not see him again.

¶ 13    In March 2016, the State moved to dismiss, arguing that the petition was untimely and that defendant had not made a substantial showing of a constitutional violation. After hearing argument on both the issue of timeliness and the merits, the trial court dismissed the petition as untimely without addressing the merits. The court found that defendant had until October 30,

2007, six months from the date that *certiorari* was denied, to file his petition. Contrary to the law at the time of the filing, defendant failed to file a notarized affidavit to show that the petition was put in the prison mail before October 30, 2007. Noting that the law had since changed to allow proof of mailing under section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2016)), the court held without further explanation that, even if the new law applied, the proof of mailing did not comply with it. Thus, the court found that, because the postmark and filing were after October 30, 2007, the petition was untimely. Defendant appeals.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant first contends that the trial court erred when it found that his petition was untimely. He argues that the change in the law applies retroactively and that his proof of service and affirmation under penalty of perjury satisfied the new law, making his petition timely. In reply, the State concedes that the change in the law is retroactive, but argues that it nevertheless does not apply to defendant and that defendant failed to satisfy its requirements. The State also argues that, even if the petition was timely, we should affirm on other grounds because defendant failed to make a substantial showing of a constitutional violation.

¶ 16    In regard to timeliness, " '[u]nder the mailbox rule, pleadings, [and] posttrial motions [citation], are considered timely filed on the day they are placed in the prison mail system by an incarcerated defendant [citation].' " *People v. Liner*, 2015 IL App (3d) 140167, ¶ 13 (quoting *People v. Shines*, 2015 IL App (1st) 121070, ¶ 31). To rely on the date of mailing as the filing date, a defendant must provide a proof of mailing that complies with Illinois Supreme Court Rule 12 (eff. Nov. 15, 1992). See Ill. S. Ct. R. 373 (eff. July 1, 2017). When defendant filed his petition, Illinois Supreme Court Rule 12(b)(3) (eff. Nov. 15, 1992) required a notarized affidavit stating the time and place of mailing, the complete address that appeared on the envelope, and

that proper postage was prepaid. See *Liner*, 2015 IL App (3d) 140167, ¶ 14. However, Rule 12(b) was subsequently amended to allow a *pro se* litigant in a correctional institution to enclose a certification pursuant to section 1-109 of the Code, in lieu of an affidavit, "of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(4) (eff. Sept. 19, 2014) (now Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017)).

¶ 17    The parties do not point to case law specifically holding that the amendment to Rule 12(b) applies retroactively. Our first step is to "look to the rule itself to ascertain whether its temporal reach has been specifically articulated." *People v. Easton*, 2018 IL 122187, ¶ 15. Here, the amended rule's text contains no such articulation, and the supreme court did not delay the rule's effective date, which would have expressed an intent that it apply only prospectively (*People v. Barr*, 2019 IL App (1st) 163035, ¶ 8). See Ill. S. Ct. R. 12(b)(4) (eff. Sept. 19, 2014). (Although the court delayed the effective date of the amendment that, among many other things, moved Rule 12(b)(4) to Rule 12(b)(6) (see Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017)), the State does not make any argument relying on that delay.) Thus, we must apply section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)). *Easton*, 2018 IL 122187, ¶ 17. Under that section, "an amendment that is purely procedural will apply retroactively unless a constitutional impediment precludes its application." *Id.* That principle applies to amendments to Illinois Supreme Court rules. *Id.* ¶ 18. Here, the State concedes that the amendment to Rule 12(b) is generally retroactive under section 4, but argues that, under *People v. Hunter*, 2017 IL 121306, it should not apply to defendant, because his "proceeding" was complete when he filed his proof of service, before the rule was changed.

¶ 18    In *Hunter*, our supreme court noted that section 4 "contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." *Id.* ¶ 31. The court held that, when proceedings in the trial court were completed before the amendment, there were no ongoing proceedings to which the amendment could apply. Thus, because the defendant's trial court proceedings had been concluded, and no further proceedings were necessitated by reversible error, applying the amended statute retroactively to the defendant's case would effectively create new proceedings for the sole purpose of applying the statute. *Id.* ¶ 33; see also *Easton*, 2018 IL 122187, ¶¶ 21-23.

¶ 19    Here, *Hunter* is distinguishable. Although defendant had already filed his proof of service, there were ongoing proceedings to which the amendment could apply. Before the date of the amendment, we reversed the judgment and remanded the case, in part because the trial court could not rule on timeliness at the first stage. The court then did not address the matter on remand until after the rule was amended. Accordingly, there were proceedings to which the amended rule could apply. As a result, the amended rule applies retroactively to defendant.

¶ 20    The next question, then, is whether defendant met the requirements of the amended rule. Defendant contends that his proof of service, when read together with his affirmation under penalty of perjury, complied with the amended rule.

¶ 21    As noted, the amended rule provides that an incarcerated *pro se* litigant may prove mailing by enclosing a certification under section 1-109, stating, *inter alia*, "the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(4) (eff. Sept. 19, 2014) (now Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017)). Section 1-109 requires that the defendant

> "shall subscribe to a certification in substantially the following form: Under penalties as
>     provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the

undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2016).

The certification "may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath." *Id.* " 'Although minor defects will be excused, proof of proper service by mail must be made in substantial compliance with the requirements of Supreme Court Rule 12 [citation].' " *Liner*, 2015 IL App (3d) 140167, ¶ 17 (quoting *Ingrassia v. Ingrassia*, 156 Ill. App. 3d 483, 502 (1987)). A slight defect in the form of the proof of service, such as a typographical error, misspelling, or other inadvertent mistake, will normally not be fatal. See *Curtis v. Pekin Insurance Co.*, 105 Ill. App. 3d 561, 566 (1982); see also *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 217 (2009) (citing *Curtis*, 105 Ill. App. 3d 561).

¶ 22    The State notes that defendant's proof of service did not contain the certification language from section 1-109 and that the separate affirmation under penalty of perjury, which did state it, failed to name the document that it applied to. The State also notes that the proof of service did not contain the complete address of the court, because it failed to list the street address and it had the wrong zip code.

¶ 23    Contrary to the State's contention, the affirmation under penalty of perjury made clear that it applied to all the documents that defendant filed. It explicitly stated that it applied to "everything contained herein," and it was situated immediately after defendant's proof of service and motion to proceed *in forma pauperis*.

¶ 24 As to the address, the question is whether the failure to list the street address and the misstatement of the zip code were minor defects that could be excused. In *Liner*, the Third District held that the failure to include *any* address was not merely a minor defect, because the amended rule required the certification to include the complete address to which the document was to be delivered. *Liner*, 2015 IL App (3d) 140167, ¶ 17. Merely naming the court in which the document was to be filed did not constitute substantial compliance. *Id.* Here, however, the address was substantially correct. While the street address was not provided, the post office box was, and the mistake in the zip code was very slight. (It was also completely understandable, as the preprinted form contained the same mistake.) There is also no dispute that the petition was delivered to the clerk and filed. Thus, we find that the proof of service substantially complied with the requirement that it state a complete address. As a result, defendant's petition was timely filed, and the court erred in dismissing it as untimely.

¶ 25 Defendant asserts that, because his petition was timely filed, a remand is necessary. The State, however, contends that we should affirm on other grounds because the petition failed to make a substantial showing of a constitutional violation. Defendant initially filed a reply brief standing on his argument that a remand is necessary because his petition was timely. However, we ordered defendant to file a supplemental brief addressing the merits.

¶ 26 The law is clear that we may affirm the trial court's judgment on any basis supported by the record. See *People v. Little*, 335 Ill. App. 3d 1046, 1051 (2003). At the first stage of postconviction proceedings, we have held that a procedurally proper summary dismissal based on an improper ground may be affirmed on other grounds. *People v. Dominguez*, 366 Ill. App. 3d 468, 473 (2006). That logic has been applied to second-stage proceedings. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17.

¶ 27 Defendant relies on *People v. Lander*, 215 Ill. 2d 577 (2005), to assert that we are required to remand the case. There, a remand was required because the defendant's attorneys failed to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). Defendant does not allege such a violation here. Thus, *Lander* does not require a remand. Instead we may consider the merits.

¶ 28 As to the merits, defendant raises two claims that he contends made a substantial showing of a violation of a constitutional right. He first argues that his counsel was ineffective for failing to investigate and call McClain to support defendant's motion to suppress based on his invocation of his right to counsel. He next argues that counsel was ineffective for failing to challenge his statements as being the product of physical coercion. The State contends in part that defendant cannot show prejudice, because the evidence against him was overwhelming.

¶ 29 The Act provides a three-stage process for the adjudication of a postconviction petition. *People v. Johnson*, 2017 IL 120310, ¶ 14. At the second stage, "the defendant bears the burden of making a substantial showing of a constitutional violation" and "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The court reviews the petition's factual and legal sufficiency in light of the trial record and the applicable law. *People v. Alberts*, 383 Ill. App. 3d 374, 377 (2008). We review the trial court's second-stage dismissal *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 30 Claims of ineffective assistance of counsel may be raised in a postconviction petition. See *People v. Brown*, 236 Ill. 2d 175, 185 (2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance,

the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010).

¶ 31 Here, as to his claim concerning his right to counsel, defendant failed to make a substantial showing of a constitutional violation, because he cannot show that he was prejudiced. Even if he made statements after invoking his right to counsel, the evidence against defendant was overwhelming independent of those statements. While defendant focuses on Hampton's failure to identify him, he ignores that Anderson credibly identified him and that Anderson's testimony was corroborated by other evidence. Other witnesses saw defendant flee the scene and assisted the police in locating defendant hiding near a shed. The clothes described by witnesses matched defendant's clothing and items discarded near the shed. The gun involved in the shooting was found under a deck near the shed. Burrs were found on a scarf found with the gun, and defendant had similar burrs stuck to his clothing. As a result, aside from any statements that defendant made to the police, the evidence against him was overwhelming. Thus, defendant has failed to establish a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

¶ 32 Defendant next contends that counsel was ineffective for failing to investigate and file a motion to suppress based on his allegations that his statements were the product of physical coercion. In his petition, he alleged that he told counsel that he was punched by the officers and that a person in the holding cell could corroborate his claim, but that counsel failed to

investigate. In his affidavit, he alleged that counsel told him that these facts were irrelevant because the State did not have enough evidence against him.

¶ 33    The State contends in part that, as with the issue concerning defendant's assertion of his right to counsel, defendant cannot show prejudice because the evidence against him was overwhelming. However, in the context of prejudice for the filing of successive postconviction petitions, our supreme court has held as a *per se* rule that "use of a defendant's physically coerced confession as substantive evidence of his guilt is never harmless error." (Emphasis omitted.) *People v. Wrice*, 2012 IL 111860, ¶¶ 71, 84. The court also held that evidence of coercion is not rendered irrelevant simply because the defendant denied confessing. *Id.* ¶¶ 53-54.

¶ 34    Here, however, defendant's assertion that he was physically coerced is rebutted by the record. Defendant alleged that counsel told him that the potential inadmissibility of his statements was irrelevant because the State did not have enough evidence to convict him. However, counsel actually filed a motion to suppress and called defendant to testify at the hearing on the motion. Plus, at the hearing, defendant never asserted that he was struck by the detectives. To the contrary, when he was asked on cross-examination whether he recalled anything else that happened during the interrogation other than that he went to the bathroom, defendant said "[n]o." Defendant's statement that he did not recall anything else that happened rebuts his later assertion that physical coercion occurred, especially in light of the fact that Evoy and Klecka testified before defendant did and they said that they did not strike defendant and that defendant already had an abrasion on his face when they first encountered him. It is unreasonable to believe that defendant would have never mentioned physical coercion, and would have specifically answered that nothing else happened, had he been physically coerced and had he

attempted to get his attorney to address the matter as he claims. Accordingly, defendant's claim fails because it is rebutted by the record.

¶ 35                                  III. CONCLUSION

¶ 36    The judgment of the circuit court of Du Page County is affirmed.

¶ 37    Affirmed.