NOTICE

Decision filed 08/06/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170477-U

NO. 5-17-0477

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 06-CF-11 |
| | ) | |
| CONNIE M. VANTLIN, | ) | Honorable |
| | ) | Robert M. Hopkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We reverse the trial court's order dismissing defendant's amended petition for postconviction relief at the second stage where postconviction counsel provided unreasonable assistance and remand for further second-stage proceedings with the appointment of new counsel.

¶ 2     Defendant, Connie M. Vantlin, appeals the order of the trial court of Lawrence County dismissing her amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)) at the second stage of the proceedings. Defendant argues that this court should remand for further second-stage proceedings where her appointed postconviction counsel provided unreasonable assistance by failing to adequately allege and support her postconviction claims. For the following reasons, we reverse and remand with directions.

1

¶ 3                                I. Background

¶ 4     The following factual recitation was taken from the record of the underlying trial court

proceedings, as well as the record of the postconviction proceedings. We recite only those facts

relevant to the issues raised in the instant appeal.

¶ 5                        A. Defendant's Trial and Direct Appeal

¶ 6      On January 10, 2006, defendant's roommate, Norma Sines, was murdered and robbed of

$700 at her home in Bridgeport, Illinois.[1] Shortly thereafter, defendant was arrested and charged

with four counts of first degree murder and one count of robbery. The trial court appointed

Attorney Daniel Shinkle (trial counsel) to represent defendant in the case.

¶ 7     On January 24, 2006, trial counsel filed a petition for fitness examination, raising a

*bona fide* doubt regarding defendant's fitness to stand trial. The trial court appointed clinical

psychologist Dr. Jerry Boyd to examine defendant and prepare a report. Dr. Boyd examined

defendant on February 16, 2006, and his report was filed with the court on March 20, 2006.

¶ 8     In his report, Dr. Boyd noted that defendant "was currently taking Paxil CR

(antidepressant) and Serequel [*sic*] (tranquilizer)." Dr. Boyd also noted that defendant had been

admitted for psychiatric treatment on three occasions over the years, including a recent admission

to Sarah Bush Lincoln Health Center (Health Center) in January 2006. Dr. Boyd indicated that he

had difficulty in reaching a diagnosis due to defendant's inconsistent and extremely exaggerated

responses during the evaluation. Dr. Boyd suspected, however, that defendant suffered from acute

depression and anxiety. Dr. Boyd opined that defendant was fit to stand trial but noted that he

would need to conduct an additional examination before reaching "a professional opinion as to

whether or not [defendant], due to mental disease or defect, was unable to know right from wrong

---

[1]Defendant and her minor child had been living with Sines for several months after defendant's mother shut off the utilities at their home across the street from Sines's home.

or was unable to conform her conduct to the requirements of the law, as of the time of the allegations." Based on Dr. Boyd's report, the trial court found defendant fit to stand trial at a subsequent hearing.

¶ 9 On May 17, 2006, trial counsel filed a motion to suppress statements defendant made to the Illinois State Police (ISP) following her arrest on January 18, 2006. In the motion, trial counsel alleged, *inter alia*, that "[t]he statements sought to be suppressed were not given knowingly and voluntarily, the interrogation having been coercive and taking place after arresting [d]efendant while hospitalized in a psychiatric ward." The motion was set for hearing on July 10, 2006.

¶ 10 On June 30, 2006, trial counsel filed a second petition for fitness examination. In the petition, trial counsel alleged that the earlier examination did not address defendant's "capacity to grasp the seriousness of the charges or her perception of the events leading to the charges."

¶ 11 At the hearing on July 10, 2006, trial counsel advised that he was not ready to proceed on the motion to suppress due to the recently filed petition for a fitness examination. Trial counsel explained that "[t]he findings of the examination may go to [the motion to suppress], so accordingly, we would request that at this time the hearing on that be continued." According to trial counsel, an additional examination was necessary to address defendant's mental state with regard to "the actual events charged as far as going to defenses, including her view of the necessity of any actions on the night charged." At trial counsel's request, the trial court appointed clinical psychologist Dr. Daniel Cuneo to examine defendant and prepare a report. Dr. Cuneo examined defendant on December 27, 2006, and prepared two reports, dated February 7, 2007, and February 8, 2007, both of which were filed with the court on February 13, 2007.

¶ 12 In both reports, Dr. Cuneo noted that defendant had three prior admissions for mental health treatment, including an admission to the Health Center from January 15, 2006, to January

18, 2006. Dr. Cuneo also noted that during her admission to the Health Center, defendant "had been placed on Paxil and Seroquel." Dr. Cuneo diagnosed defendant with "Major Depressive Episode, Recurrent," "Polysubstance Dependence by History," and "Personality Disorder, Not Otherwise Specified – Borderline and Paranoid." In his February 7, 2007, report, Dr. Cuneo opined that defendant was fit to stand trial because her mental illness did not substantially impair her ability to understand the nature and purpose of the proceedings against her or her ability to assist in her own defense. In his February 8, 2007, report, Dr. Cuneo opined that defendant was suffering from a substantial disorder of thought, mood, and behavior at the time of the alleged offenses, which impaired her judgment and affected her behavior, "but not to the extent that she was unable to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law." However, Dr. Cuneo also concluded that defendant's mental illness "was the major factor contributing to her actions and altering her perceptions at the time of the alleged offenses." Thus, Dr. Cuneo opined that defendant was legally sane at the time of the offenses but "would qualify for a Guilty But Mentally Ill Plea." Based on the reports of both Drs. Cuneo and Boyd, the trial court, again, found defendant fit to stand trial at a subsequent hearing.

¶ 13    At a pretrial hearing held on April 11, 2007, trial counsel addressed the previously filed motion to suppress, stating that he had reviewed "the tape that we're most concerned about. We are withdrawing that Motion to Suppress." Trial counsel also stated that, despite previous indications, he had decided not to file a motion for change of venue. Trial counsel explained that "after considering everything involved and discussing it with [defendant]," he had concluded that it was "in [defendant's] best interests to have the venue here in Lawrence County."

¶ 14    On May 14, 2007, defendant's five-day jury trial commenced. The State presented the testimony of several witnesses and numerous exhibits, including, *inter alia*, a video recording of

4

defendant's statements to the ISP following her arrest on January 18, 2006. Trial counsel presented evidence pertaining to defendant's prior disorderly conduct charge, including court records and the testimony of JoAnn Boren, a telecommunicator at the Lawrence County Sheriff's Department. Defendant also testified regarding the events and circumstances leading to, and surrounding, Sines's death. The trial testimony was briefly summarized in this court's prior decision in *People v. Vantlin*, No. 5-07-0421 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15    Following closing arguments, the trial court instructed the jury, *inter alia*, that a mitigating factor, which would reduce the offense of first degree murder to the lesser offense of second degree murder, existed if defendant either (1) acted under a sudden and intense passion resulting from serious provocation by the deceased at the time of the killing or (2) believed that circumstances existed that justified the use of deadly force at the time of the killing, but her belief that such circumstances exist is unreasonable. The jury subsequently found defendant guilty on all charges.

¶ 16    On June 15, 2007, trial counsel filed a motion for new trial, asserting that the trial court erred in numerous respects. Trial counsel did not allege in the motion that the court erred in admitting the video recording of defendant's statements to the ISP.

¶ 17    On June 21, 2007, a presentence investigation (PSI) report, which included defendant's mental health treatment records, was filed with the trial court. It was noted in the PSI that defendant had a current prescription for "Paxil CR 40 mlg," a medication she had been prescribed in the past. Defendant's treatment records revealed that she had received intermittent treatment for mental health issues beginning at age 14 and that she had been prescribed "Paxil CR 25 mg" following a panic attack in 2004. Defendant's most recent treatment record, a discharge summary from the Health Center, showed that defendant was admitted on January 15, 2006, for her "third psychiatric admission overall for suicidal and homicidal threats." It was noted that defendant was "started

5

back on Paxil" and "Seroquel twice a day" following her admission, and that "[s]he had a very restricted odd affect." It was also noted that defendant was discharged from the Health Center directly into the custody of the ISP on January 18, 2006, with the following medications: two weeks of samples of Paxil CR 25 mg; two weeks of samples of Seroquel 25 mg; Wygesic with no refill; and Colace 100 mg with no refill.

¶ 18     On June 29, 2007, the trial court denied trial counsel's motion for new trial and proceeded to a sentencing hearing. Trial counsel presented Dr. Cuneo's February 7, 2007, report and called defendant as a witness. Following defendant's testimony, she made a statement in allocution. The court, after hearing arguments from counsel and considering the evidence presented, sentenced defendant to 50 years' imprisonment.

¶ 19     On July 11, 2007, trial counsel filed a motion to reduce sentence and to reconsider, asserting that defendant's sentence was excessive and realleging the errors raised in the previously filed motion for new trial. Trial counsel, again, did not raise an issue regarding the admission of the video recording of defendant's statements to the ISP. The trial court subsequently denied defense counsel's motion to reduce sentence and request for a new trial. Defendant then appealed.

¶ 20     On direct appeal, the sole issue raised by defendant's appointed appellate defender was whether defendant's sentence was excessive. This court affirmed defendant's sentence, concluding that the trial court considered the evidence, weighed the factors in aggravation and mitigation, and did not abuse its discretion in sentencing defendant to 50 years—10 years below the maximum possible sentence. *People v. Vantlin*, No. 5-07-0421 (Mar. 30, 2009) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed a petition for leave to appeal, which was denied by the Illinois Supreme Court. *People v. Vantlin*, 233 Ill. 2d 594 (Sept. 30, 2009).

¶ 21                    B. Postconviction Proceedings and Appeals

¶ 22    On June 17, 2010, defendant filed a *pro se* petition for postconviction relief, raising numerous constitutional claims. In relevant part, defendant alleged that she was denied due process when the ISP violated her fifth amendment rights by interrogating her (1) without properly advising her of her *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and (2) after she "was taken from mental ward facility and on medications." Defendant also alleged that she received ineffective assistance of trial counsel when counsel failed to: (1) cross-examine, confront, and impeach witnesses; (2) make appropriate objections at trial; (3) ensure the jury was not subject to racial bias; (4) investigate the list of witnesses she provided prior to trial; (5) request a change of venue; (6) challenge the voluntariness of her statements to police; (7) caution defendant regarding the dangers of testifying at trial; (8) provide advance notice that she would be permitted to make a statement in allocution at the sentencing hearing; (9) review the evidence with her prior to trial; (10) elicit testimony or evidence at trial regarding Sines's abuse and threats towards defendant's son; (11) offer computer evidence at trial; and (12) investigate the State's witnesses prior to trial. Defendant further alleged that appellate counsel was ineffective for failing "to raise viable issues which could've produced a different outcome." Defendant also raised various claims regarding cruel and unusual punishment, "prosecutorial-vindictiveness," the sufficiency of the evidence, the admissibility of certain evidence, and her right to confrontation. The trial court later summarily dismissed defendant's petition, finding, *inter alia*, that she failed to "allege or state specific facts which would state the gist of a constitutional claim." Defendant then appealed the first-stage dismissal of her *pro se* petition to this court.

¶ 23    On appeal, this court reversed and remanded for further proceedings, holding that defendant's *pro se* petition stated the gist of a constitutional claim. *People v. Vantlin*, 2012 IL App

7

(5th) 100499-U, ¶ 1. In so holding, this court focused on defendant's ineffective-assistance-of-counsel claims, noting that "the circumstances surrounding the majority of her ineffective-assistance-of-counsel claims involved private conversations between herself and her trial counsel and that details of these private conversations [were] not contained in the appellate record." *Id.* ¶ 7. Accordingly, this court could not affirm on the basis of *res judicata* or waiver because those claims "could not have been raised on direct appeal." *Id.* This court also rejected the State's argument that defendant's *pro se* petition was properly dismissed due to her failure to attach documentation in support of her claims, noting that defendant "should not be expected to obtain an affidavit from her trial counsel stating that counsel was ineffective." *Id.* ¶ 8. This court further rejected the State's argument that dismissal was proper because defendant "alleged violations of constitutional rights in general terms without specifying the factual allegations that support[ed] her claims," noting that defendant "set forth a number of specific claims in her *pro se* petition." *Id.* ¶¶ 11-13.

¶ 24    On remand, defendant's *pro se* postconviction petition advanced to the second stage and Attorney Lindsey D. Floyd (postconviction counsel) was appointed to represent defendant in the postconviction proceedings. On July 7, 2014, postconviction counsel filed an amended four-count[2] petition for postconviction relief. In count I, postconviction counsel alleged that defendant was denied her right to due process under the fifth amendment to the United States and Illinois Constitutions when the ISP subjected defendant to a custodial interrogation (1) without properly advising defendant of her *Miranda* rights and (2) after "she had just been released from the psychiatric department of the hospital where she had been hospitalized and was under the influence

---

[2]Counts III and IV, in which postconviction counsel alleged violations of defendant's right to confront and cross-examine the State's witnesses and right against cruel and unusual punishment, are not at issue in the instant appeal.

of various medications as a result of her hospitalization," which rendered her incapable of giving knowing consent to the interrogation. Postconviction counsel further alleged that "[t]he interrogation was subsequently used against her in the trial which resulted in her conviction."

¶ 25    In count II, postconviction counsel alleged that defendant was denied her right to effective assistance of counsel under the sixth amendment to the United States and Illinois Constitutions "and *Strickland v. Washington*, 466 U.S. 668 (1984)" when trial counsel failed to: (1) request a change of venue from Lawrence County, Illinois, "a small rural community with a very small black population," which resulted in an "all[-]white" jury panel; (2) "discuss the contents of the discovery materials he received from the State" with defendant, "nor review the State's evidence with her before trial, specifically State's exhibit 204A, the videotaped interview"; (3) "advise [defendant] of the risks of testifying in a criminal proceeding" or "that it is wise for a [defendant] not to testify in a criminal trial"; (4) "adequately prepare [defendant] for her testimony at trial" and "inform her of what questions he would ask or the questions likely to be asked by the State"; (5) "offer computer evidence at trial in order to impeach Caitlin Knight (Bergeaux) and discredit her testimony"; (6) "elicit any testimony from [defendant] or her witnesses, a list of which was provided to counsel, regarding the threats made to her and her son, A.J.V., by the deceased, Norma Sines, thus removing any possibility of a defense of self-defense"; (7) "thoroughly investigate the witnesses of the State, including the witnesses['] background, what testimony would be elicited, discuss the witnesses with [defendant], nor review [defendant's] notes taken during the State's witnesses' testimony to present during cross-examination of those witnesses"; (8) "inform [defendant] that at the [s]entencing hearing she should make a statement in allocution" and "prepare her for what she should say to the Court"; (9) to pursue the motion to suppress defendant's statements "despite the improper *Miranda* warnings and [defendant] being under the influence of

9

medications after her discharge from Sarah Bush psychiatric facility"; (10) "object to the admission of the autopsy report on the basis that it was not-certified [*sic*] as required to be admitted under the business record exception to the hearsay rule"; and (11) "review the presentence report with [defendant] prior to the sentencing hearing." Postconviction counsel further alleged that, "[d]espite reasonable efforts at suitable representation, [trial counsel's] representation fell below the standard set forth in *Strickland v. Washington*, and [defendant] was improperly represented which resulted in her conviction after trial."

¶ 26 The amended petition included a certification, pursuant to section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2014)), signed by defendant and a notarized certificate of service signed by postconviction counsel. Postconviction counsel attached to the amended petition an affidavit from defendant, "as required by 725 ILCS 5/122-1," in which defendant attested to the same facts set forth in the allegations in the amended petition. Postconviction counsel also attached a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), alleging that she had consulted with defendant in person and by mail to ascertain her constitutional claims, examined the court file, and "made any amendments to the petition filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions."

¶ 27 On November 24, 2014, the State filed a motion to dismiss defendant's amended postconviction petition, asserting that defendant's claims were either forfeited, barred by *res judicata*, lacked merit, or were unsupported by specific factual allegations and evidence. In addressing the claim raised in count I, the State alleged that defendant forfeited the issue by failing to object to the admissibility of her statements at trial and by failing to raise the issue in her posttrial motion or on direct appeal. The State also alleged that the recording of defendant's statements showed she was properly advised of her *Miranda* rights and "was functioning normally" with "no

10

indication that whatever medications she was taking had any adverse impact on her." The State further alleged that defendant had "failed to provide evidentiary support for the medication issue." Specifically, the State noted that defendant had "failed to attach her medical records concerning the medication she was taking, if any, and [that] no affidavit that the medications would affect her ability to knowingly and voluntarily waive her rights [was] attached." In addition, the State asserted that trial counsel's decision to withdraw the motion to suppress was sound trial strategy, given that there was additional evidence of defendant's admission to killing Sines and that the videotaped statements supported her self-defense theory.

¶ 28    With regard to count II, the State first alleged that defendant's ineffective-assistance-of-counsel claims lacked merit. The State acknowledged that the case had been remanded for second-stage proceedings because most of the allegations in support of defendant's ineffective-assistance-of-counsel claims depended upon private conversations between trial counsel and defendant and that defendant was not expected to obtain an affidavit from trial counsel. The State argued, however, that the allegations in count II of the amended petition did not depend on such conversations. The State next addressed each specific claim of ineffective assistance of counsel. Regarding defendant's claims that trial counsel failed to review the State's evidence with her, properly advise her of the risks of testifying, adequately prepare her to testify at trial, and investigate the State's witnesses, the State asserted that defendant supported the claims with only conclusory allegations and no allegations of prejudice. The State also asserted that defendant testified at trial regarding Sines's prior threats and, thus, her claim that trial counsel had failed to elicit testimony from her to show self-defense was false. Regarding defendant's claim that trial counsel failed to elicit the same testimony from other witnesses, the State claimed that defendant's failure to "provide the names of the witnesses plus affidavits setting forth what they would have

11

said if called to testify dooms this allegation as to those witnesses." Lastly, in addressing defendant's claim regarding trial counsel's failure to review the PSI with her, the State noted that defendant did not allege the PSI contained inaccuracies nor "suggest that she was prejudiced by this alleged failure."

¶ 29 On March 25, 2015, postconviction counsel filed a written response to the State's motion to dismiss. In the response, postconviction counsel included additional factual allegations and documentation in support of the amended petition. With regard to count I, postconviction counsel alleged that defendant was admitted to the Health Center on January 15, 2006, and that she was discharged directly into the custody of the ISP on January 18, 2006, after she was prescribed Paxil, Seroquel, Wygesic, and Colace. Postconviction counsel also alleged that defendant "had a very restricted odd affect." In support, postconviction counsel attached the discharge summary from the Health Center as an exhibit to the response. Postconviction counsel further alleged that Seroquel was prescribed for bipolar disorder and had various known side effects, including sleepiness, drowsiness, difficulty thinking, and difficulty performing normal activities. In support, postconviction counsel attached a PDF document that contained information pertaining to Seroquel. Contrary to the State's assertion, postconviction counsel alleged that the videotaped interview showed defendant was unable to recall certain events and often responded "I think" or "I might have" when asked specific questions. Postconviction counsel further alleged that defendant's calm demeanor throughout the interview suggested "she might have been under the influence of some sort of medication as most people being interrogated for a murder investigation would appear to be nervous." Lastly, postconviction counsel alleged that the claim was not forfeited because she had alleged that trial counsel was ineffective for withdrawing the motion to suppress.

¶ 30    With regard to count II, postconviction counsel alleged, contrary to the State's position, that most, if not all, of defendant's ineffective-assistance-of-counsel claims involved private conversations between defendant and trial counsel. Postconviction counsel specified that defendant was unprepared to testify at trial because she "stumbled over the questions" asked and was not given the opportunity to explain her actions or to provide more information regarding Sines's volatile nature, which "could have resulted in a not guilty verdict due to self[-]defense and/or defense of others, specifically her son A.J." Postconviction counsel also alleged that trial counsel failed to investigate or present witnesses to assist in defendant's defense and that "[a]dditional evidence could have been presented which could have proven that [d]efendant acted in self[-]defense." Lastly, postconviction counsel alleged that "[c]ollectively as a whole, [trial counsel's] errors as cited above, resulted in the ineffective assistance of defense counsel" and that "defendant could have received a different outcome either in the eyes of the jury or of the sentencing Judge" absent such errors. Postconviction counsel concluded by requesting that the trial court set the matter for an evidentiary hearing after considering both the amended petition and response. The response included a certification, pursuant to section 1-109 of the Code, signed by defendant.

¶ 31    On April 27, 2015, the trial court held a hearing on the State's motion to dismiss. The State, consistent with its motion to dismiss, argued that defendant's claims were either forfeited, barred by *res judicata*, lacked merit, or were unsupported by specific factual allegations and evidence. Postconviction counsel did not specifically address the State's forfeiture argument but argued that the amended petition and response made a substantial showing of violations of defendant's constitutional rights. Postconviction counsel relied heavily on the discharge summary from the Health Center, explaining that "[a]t the time of preparing our motion, that was not available to us,

13

but we were able to attach it when we did the response." Postconviction counsel argued that the medications defendant was taking, specifically Seroquel, "could have and possibly did inhibit her ability to give that knowing consent." Postconviction counsel, presumably relying on the separate PDF document, argued that "Seroquel is a known drug to have side effects, including sleepiness or drowsiness and also confusion or difficulty thinking." In addition, postconviction counsel argued that defendant was denied the right to effective assistance of trial counsel where "the accumulative [*sic*] effect of [trial counsel's] presentation at the trial and in pretrial and post-trial motions [fell] below the objective standard of reasonable—reasonableness, and also prejudiced [defendant], such as there is a reasonable probability that if it weren't for his objectiveness [*sic*] that the result could have been different in the—in the end." According to postconviction counsel, defendant "could have received possibly a different outcome, that being a finding of self-defense or a lesser charge," but trial counsel presented insufficient evidence to support a finding of self-defense and failed to call additional witnesses to testify regarding Sines's threats to defendant and her son.

¶ 32   In response, the State asserted that defendant's claims of ineffective assistance of trial counsel were based on conclusory allegations that were unsupported by evidence. With regard to postconviction counsel's assertion that additional witnesses could have been called to show self-defense, the State noted that there were "no affidavits for any of these witnesses for what they would have said." The State further asserted that postconviction counsel failed to provide an affidavit from a medical expert attesting that the medications defendant was taking affected her ability to knowingly and intelligently waive her rights. Lastly, the State argued that, even taking all of her well-pleaded facts as true, defendant had "not established enough to entitle her to an evidentiary hearing." The trial court asked postconviction counsel if she had anything further, and

14

postconviction counsel responded, "No, Your Honor. Thank you." The court then took the matter under advisement, stating that "[s]ince I'm going to have to reread the transcript, listen to—to the interviews, probably read a transcript of today's argument, why it's going to take a while."

¶ 33 On October 12, 2017, the trial court entered a 23-page written order granting the State's motion and dismissing defendant's amended postconviction petition without an evidentiary hearing. The written order included a section titled, "Procedural Comments by the Court," in which the court criticized postconviction counsel's response to the State's motion to dismiss. Specifically, the court noted that the response was "verified and makes factual allegations." The court, citing *People v. Nitz*, 2011 IL App (2d) 100031, also noted that the response was "certified pursuant to 735 ILCS 5/1-109 rather than being supported by affidavit verified pursuant to 725 ILCS 5/122-1(b)." In addition to "the affidavit problem," the court noted as follows:

"Defendant, rather than further amending her Amended Petition for Post-Conviction relief to assert these new allegations of purported specific facts, *** filed a Response to the Motion to dismiss in which, instead of arguing the facts set forth in the Amended Petition and supporting affidavit, she attempted to allege new factual material."

The court next addressed the claims raised in each count of the amended petition. The court agreed with a majority of the State's arguments and, thus, its findings closely mirror the allegations in the State's motion to dismiss.

¶ 34 Specifically, with regard to count I, the trial court first found "the issue of Miranda [*sic*] compliance for [d]efendant's statement to the [ISP]" forfeited because trial counsel neither objected to the admission of defendant's statements at trial nor raised the issue in a posttrial motion. The court also found that the videotaped interrogation clearly showed the *Miranda* warnings were correctly given prior to questioning and that defendant was functioning normally

15

with no indication the medications "she may have been on" affected her responses. The court further noted that "[d]efendant failed to attach any medical records to her Amended Petition or to any properly verified affidavit to show what particular medications she was on." The court also concluded that trial counsel withdrew the motion to suppress "for reasons of sound trial strategy." Lastly, citing *People v. Blair*, 215 Ill. 2d 427 (2005), the court noted that "the common law doctrines of res judicata [*sic*] and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal."

¶ 35 With regard to count II, the trial court found that most of defendant's claims of ineffective assistance of trial counsel failed to allege specific facts, as opposed to legal conclusions, showing either that trial counsel's performance was deficient or that there was a reasonable probability that the result would have differed absent trial counsel's alleged errors. The court also found that defendant failed to support the allegation regarding trial counsel's failure to call additional witnesses with specific names or "affidavits setting forth what they would testify to if called." The court, again, addressed defendant's claim that trial counsel was ineffective for withdrawing the motion to suppress, finding that trial counsel's decision was reasonable and that the motion to suppress "had little chance of success." The court also found that defendant failed to allege she was prejudiced by trial counsel's failure to pursue the motion.

¶ 36 On October 19, 2017, postconviction counsel filed a motion for leave to withdraw, alleging that she had since been appointed as the assistant state's attorney for Lawrence County and "believe[ed] this to be a conflict of interest." Shortly thereafter, the trial court entered an order granting postconviction counsel leave to withdraw as counsel of record for defendant.

¶ 37 Defendant then filed a *pro se* notice of appeal of the trial court's October 12, 2017, order dismissing her amended petition, along with a notarized document titled, "NOTICE OF

16

FILING/PROOF OF SERVICE" (proof of service). The proof of service listed the addresses of the Lawrence County circuit clerk and state's attorney offices and stated that on November 7, 2017, defendant "placed the attached or enclosed documents in the institutional mail at Logan Correctional Center properly addressed to the parties listed above for mailing through the United States Postal Service." The proof of service was signed by defendant and "Subscribed and Sworn" before the notary on November 7, 2017. The Lawrence County circuit clerk file-stamped both the notice of appeal and proof of service with a date of November 27, 2017. The notice of appeal was later file-stamped by the clerk of this court on December 6, 2017.

¶ 38                                    II. Analysis

¶ 39    Defendant appeals the second-stage dismissal of her amended postconviction petition pursuant to Illinois Supreme Court Rule 651(a) (eff. Feb. 6, 2013). See Ill. S. Ct. R. 651(a) ("An appeal from a final judgment of the [trial] court in any postconviction proceeding shall lie to the Appellate Court in the district in which the [trial] court is located."). Although neither party raises the issue, we find it necessary to examine our jurisdiction to decide this appeal before turning to the merits. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."). Specifically, we must consider whether defendant filed a timely notice of appeal from the trial court's order dismissing her amended petition. See *People v. Lugo*, 391 Ill. App. 3d 995, 997 (2009) ("A timely filed notice of appeal is necessary to establish this court's jurisdiction.").

¶ 40    Illinois Supreme Court Rule 651(d) provides that appeals in postconviction proceedings are governed by the same rules that apply to criminal appeals. *Id.* Accordingly, pursuant to Illinois Supreme Court Rule 606(b), a defendant must file a notice of appeal within 30 days after the entry

17

of the order disposing of the petition or within 30 days after the entry of an order disposing of a timely filed motion attacking the judgment. *People v. LaPointe*, 365 Ill. App. 3d 914, 919 (2006).

¶ 41 Here, the trial court entered the order dismissing defendant's amended petition on October 12, 2017. Because defendant did not file a motion attacking the judgment, she was required to file a notice of appeal within 30 days after the entry of the October 12, 2017, order. The record reveals that defendant filed the notice of appeal with a notarized proof of service stating that she placed the documents in the prison mail system for mailing on November 7, 2017, within the allotted 30 days. However, the documents, including defendant's notice of appeal, were not file-stamped by the circuit clerk until November 27, 2017, well beyond the allotted 30 days. Defendant, without citation to legal authority or further discussion, appears to rely on the time of mailing rather than the time of filing.

¶ 42 Illinois Supreme Court Rule 373, made applicable to criminal appeals under Illinois Supreme Court Rule 612(s), provides as follows:

"Unless received after the due date, the time of filing records, briefs or other documents required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court. If received after the due date, the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing. Proof of mailing shall be as provided in Rule 12. This rule also applies to a motion directed against the judgment and to the notice of appeal filed in the trial court." Ill. S. Ct. R. 373 (eff. July 1, 2017).

¶ 43 Illinois Supreme Court Rule 12 previously "required a notarized affidavit stating the time and place of mailing, the complete address that appeared on the envelope, and that proper postage was prepaid." *People v. Scott*, 2019 IL App (2d) 160439, ¶ 16. However, Rule 12 has since been

18

amended and now provides that service is proved "in case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017); *Scott*, 2019 IL App (2d) 160439, ¶ 16. Section 1-109 of the Code provides, in relevant part, as follows:

"The person or persons having knowledge of the matters stated in a pleading, affidavit or other document certified in accordance with this Section shall subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2018).

" 'Although minor defects will be excused, proof of proper service by mail must be made in substantial compliance with the requirements of Supreme Court Rule 12 [citation].' " *People v. Liner*, 2015 IL App (3d) 140167, ¶ 17 (quoting *Ingrassia v. Ingrassia*, 156 Ill. App. 3d 483, 502 (1987)).

¶ 44    Here, defendant filed with the notice of appeal a notarized proof of service in which she listed the addresses of the Lawrence County circuit clerk and state's attorney's offices and stated that she placed the documents in the intuitional mail at Logan Correctional Center on November 7, 2017. The proof of service included neither a certification under section 1-109 of the Code, as required by amended Rule 12, nor a statement that proper postage was prepaid, as required by Rule 12 prior to its amendment. However, the proof of service was signed by defendant and "Subscribed

19

and Sworn" before the notary on November 7, 2017. The proof of service also listed the delivery addresses and stated the time and place of the mailing. Although the mailing envelope has not been included in the record on appeal, the record makes clear that the documents were received and file-stamped by the clerk of the trial court on November 27, 2017. Under these circumstances, we conclude that the proof of service filed with defendant's notice of appeal substantially complied with the requirements of Rule 12 such that it preserved the timely filing date of November 7, 2017.

¶ 45    We acknowledge there was a lengthy delay between the time of mailing on November 7, 2017, and the time of filing on November 27, 2017; however, there is no indication in the record that the delay was attributable to defendant. Reviewing courts have previously acknowledged that the use of the prison mail system to file court documents "can result in delays of several days before the court clerk receives the documents" and concluded that "it would be unfair to require the post-conviction petitioner to assume the responsibility of accounting for such erratic delays." *People v. Saunders*, 261 Ill. App. 3d 700, 704 (1994). Therefore, we consider defendant's notice of appeal from the trial court's October 12, 2017, order as timely filed on November 7, 2017, and conclude that we have jurisdiction over this appeal. We now turn to the issue raised by defendant on appeal.

¶ 46    On appeal, defendant does not challenge the second-stage dismissal of her amended postconviction petition on the merits. She, instead, contends that her appointed postconviction counsel provided an unreasonable level of assistance during the second-stage proceedings. She, thus, requests that this court remand for appointment of new postconviction counsel and further second-stage proceedings.

¶ 47    The Act "provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights." *People v. Pendleton*, 223 Ill. 2d 458, 471

20

(2006) (citing *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005)). Postconviction proceedings under the Act "may consist of as many as three stages." *Id.* at 472 (citing 725 ILCS 5/122-2.1(a)(2) (West 2000)). If the petition is not dismissed by the trial court as "frivolous" or "patently without merit" at the first-stage proceedings, it will proceed to the second stage. *People v. Cotto*, 2016 IL 119006, ¶ 26. "During second-stage proceedings, the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition." *Id.* ¶ 27 (citing 725 ILCS 5/122-4, 122-5 (West 2010)). At the second stage, the court determines whether the well-pled allegations in the petition, which are taken as true unless affirmatively refuted by the record, "and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33. If such showing is made, the defendant is entitled to a third-stage evidentiary hearing. *Id.* ¶ 34. Any fact-finding or credibility determinations will be made at the evidentiary stage, rather than the dismissal stage, of the proceedings. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998).

¶ 48    The Act "provides the right to counsel at the second and third stages of the proceedings." *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 29 (citing 725 ILCS 5/122-4 (West 2012)). "Because the source of this right to counsel is statutory rather than constitutional, the level of assistance guaranteed is not the same as the level of assistance constitutionally mandated at trial or on direct appeal." *Id.* (citing *People v. Greer*, 212 Ill. 2d 192, 203-04 (2004)). Our supreme court has determined that the Act requires only a "reasonable" level of assistance of counsel. *Greer*, 212 Ill. 2d at 204. "To assure the reasonable assistance required by the Act, Supreme Court Rule 651(c) imposes specific duties on postconviction counsel." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007) (citing *People v. Turner*, 187 Ill. 2d 406, 410 (1999)). Rule 651(c) requires that postconviction counsel: "(1) consult with the petitioner either by mail or in person to ascertain the

21

contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions." *Id.*

¶ 49    Postconviction counsel may demonstrate compliance with Rule 651(c) by filing a certificate, representing that counsel has fulfilled his or her duties. *Id*. at 50. "The filing of a Rule 651(c) certificate gives rise to a presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the Act." *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. To overcome this presumption, a defendant must show that postconviction counsel did not substantially comply with requirements of Rule 651(c). *Id.* The presumption also may be rebutted by the record. *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 12. "[W]here postconviction counsel failed to fulfill the duties of Rule 651(c), remand is required, regardless of whether the claims raised in the petition had merit." *People v. Russell*, 2016 IL App (3d) 140386, ¶ 12. In other words, "[p]ostconviction counsel's noncompliance with Rule 651(c) may not be excused on the basis of harmless error." *Id.*; *Turner*, 187 Ill. 2d at 416 (reviewing courts "will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)"). "We review *de novo* the question of whether counsel provided the reasonable level of assistance required." *Wallace*, 2018 IL App (5th) 140385, ¶ 31.

¶ 50    Here, postconviction counsel filed a Rule 651(c) certificate stating that she had consulted with defendant in person and by mail to ascertain defendant's constitutional claims, examined the court file, and "made any amendments to the petition filed *pro se* that [were] necessary for an adequate presentation of [defendant's] contentions." Defendant does not challenge the validity of the certificate. Accordingly, there is a presumption that postconviction counsel complied with the

requirements of Rule 651(c) and provided a reasonable level of assistance. Defendant argues that postconviction counsel failed to comply with the third requirement of Rule 651(c) when counsel failed to adequately amend and support the allegations in the first two counts of the amended petition. The State argues that defendant has failed to meet her burden of overcoming the presumption. After careful review, we find the record rebuts the presumption.

¶ 51   To comply with the third requirement of Rule 651(c), postconviction counsel was required to shape defendant's claims into "appropriate legal form." *People v. Johnson*, 154 Ill. 2d 227, 238 (1993). Pursuant to section 122-2 of the Act, a petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2014). A petition "which is not supported by affidavits or other supporting documents is generally dismissed without an evidentiary hearing unless the petitioner's allegations stand uncontradicted and are clearly supported by the record." *Johnson*, 154 Ill. 2d at 240.

¶ 52   Here, rather than standing on defendant's *pro se* petition, postconviction counsel filed an amended four-count petition and supporting affidavit from defendant. Because postconviction counsel did not include all of the claims previously raised in defendant's *pro se* petition, we presume counsel determined that the claims raised in the amended were not frivolous. See *Greer*, 212 Ill. 2d at 205 ("An attorney *** who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of defendant."). As noted, postconviction counsel also filed with the amended four-count petition a Rule 651(c) certificate.

¶ 53   After postconviction counsel filed the amended petition and Rule 651(c) certificate, however, the State moved to dismiss the amended petition, asserting that the claims were either forfeited, waived, barred by *res judicata*, meritless, or unsupported by specific facts and evidence.

Postconviction counsel then filed a response to the State's motion in which counsel included additional, specific factual allegations and documentation in support of defendant's claims. Notably, in support of count I, postconviction counsel attached the discharge summary from the Health Center, which identified the specific medications defendant had taken prior to the interrogation and indicated that defendant had "a very restricted odd affect." Postconviction counsel also attached a PDF document pertaining to Seroquel, which described the known side effects as sleepiness, drowsiness, difficulty thinking, and difficulty performing normal activities. Postconviction counsel also identified specific points during the interrogation which, in counsel's view, suggested defendant was under the influence of medications. At the conclusion of the response, postconviction counsel requested that the trial court consider the allegations in both the amended petition and response. At the hearing on the State's motion, postconviction counsel asserted that the discharge summary was not available when the amended petition was filed. We note, however, that the discharge summary was available at the time postconviction counsel filed the amended petition, as it was included with the PSI contained in the court file.

¶ 54    Over two years after the hearing, the trial court entered a written order dismissing the amended petition in its entirety. The court initially determined that postconviction counsel's response was procedurally improper and, thus, it did not consider the additional allegations and supporting documentation in rendering its decision. In support, the court noted that postconviction counsel did not seek leave to further amend the petition or to file a second amended petition to include the additional allegations and supporting documentation. Consequently, in dismissing count I, the court found that defendant "failed to attach any medical records" or a "properly verified affidavit to show what particular medications she was on." Because postconviction counsel's failure to properly amend the petition to include available supporting documentation contributed

24

to the dismissal of defendant's claim, we find the record conflicts with counsel's certification that she made any amendments to the petition that were necessary to adequately present defendant's claims.

¶ 55    Defendant further argues that, because the discharge summary was present in the record on direct appeal, postconviction counsel should have amended the claim to allege ineffective assistance of appellate counsel for failing to raise the issue on direct appeal. Our supreme court has held "that postconviction counsel has a duty under Rule 651(c) to meet certain procedural requirements to present a constitutional claim adequately under the Act," which includes amending the *pro se* petition to allege ineffective assistance of appellate counsel to avoid forfeiture. *Perkins*, 229 Ill. 2d at 44 (citing *Turner*, 187 Ill. 2d at 412-14). Generally, issues that could have been raised on direct appeal but were not raised are considered forfeited in postconviction proceedings. *Turner*, 187 Ill. 2d at 412-13. Here, although defendant included in the *pro se* petition a general claim that appellate counsel was ineffective, postconviction counsel did not raise this claim in the amended petition. The trial court, in addition to finding the medication issue unsupported by evidence, indicated that the issue could have been raised on direct appeal but was not and, thus, was forfeited. Thus, we agree with defendant that postconviction counsel also violated the third requirement of Rule 651(c) by failing to allege ineffective assistance of appellate counsel.

¶ 56    The State asks this court to affirm the trial court's second-stage dismissal despite postconviction counsel's failures, asserting that the court also found the medication issue meritless. As the State correctly notes, the court's order indicates that it reviewed the videotape of the interrogation and found no indication that defendant was under the influence of any medication. According to the State, this finding shows the court determined that the record rebutted the allegation that defendant was under the influence of medication during the interrogation. However,

25

"[o]ur supreme court's Rule 651(c) analysis has been driven, not by whether a defendant's claims have any merit or if he can establish substantial prejudice, but by the understanding that when postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized." *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 32. Moreover, it is unclear whether the court would have reached the same conclusion had postconviction counsel properly attached the discharge summary and PDF document to the amended petition. See *Turner*, 187 Ill. 2d at 416 (a reviewing court "will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)").

¶ 57     For the reasons outlined above, we find the record rebuts the presumption that postconviction counsel complied with Rule 651(c) and provided a reasonable level of assistance. As a result, we need not address defendant's remaining arguments on appeal. We express no opinion on the merits of the claims raised in the amended petition, nor have we determined whether an evidentiary hearing on defendant's claims would be appropriate in this case. See *Johnson*, 154 Ill. 2d at 246 (it is within the province of the trial court, not the reviewing court, to determine on the basis of a complete record whether a postconviction claim requires an evidentiary hearing).

¶ 58                                III. Conclusion

¶ 59     Based on the foregoing, we reverse the order of the trial court dismissing defendant's amended petition and remand for further second-stage proceedings with the appointment of new counsel.

¶ 60     Reversed and remanded with directions.